## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**WILLIAM BISHOP and**
**JUANITA BISHOP,**

        **Plaintiffs,**

**v.**　　　　　　　　　　　　　　　　**CIVIL ACTION NO.  2:09-CV-01076**

**QUICKEN LOANS, INC.,**
**ONEWEST BANK, FSB, and**
**JOHN DOE HOLDER,**

        **Defendants.**

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.　　　This action arises out of the practice characterized by the United States Department of Housing and Urban Development as predatory lending,[1] whereby a large national lender solicits unsophisticated consumers to enter into unwise high-interest home financing agreements.  In this case, the Defendants solicited the Plaintiffs and fraudulently induced them to procure an unwise high interest negative amortization loan relying upon an inflated appraisal. The Plaintiffs bring this action for fraud, unconscionable contract, and loan servicing violations.

### PARTIES

2.　　　(a)　　　The Plaintiff, William Bishop, is the borrower of the loan that is the subject this action.  He is retired from the military and worked in the coal mines for 23 years.  He is unsophisticated in financial matters and resides in Beckley, West Virginia.

---

[1] See HUD-Treasury National Predatory Lending Task Force, Joint Report: Curbing Predatory Home Mortgage Lending, (visited September 25, 2008) <http://www.huduser.org/Publications/pdf/treasrpt.pdf>.



**EXHIBIT**

B

(b)     The Plaintiff, Juanita Bishop, is the wife of the William Bishop. She resides with her husband in Beckley, West Virginia, and is the co-owner of their home.  She is also unsophisticated in financial matters.

3.     <u>Lender</u>:  The Defendant, Quicken Loans, Inc. ("Quicken") is a corporation with an office located at 6007 U.S. Rt. 60 E., Ste. 107, Barboursville, Cabell County, West Virginia 25504 and with its principal place of business at 20555 Victor Parkway, Livona, MI 48152. Quicken is the lender of Plaintiff's loan.

4.     <u>Servicer</u>:  The Defendant OneWest Bank, FSB ("OneWest") is a Federal Savings Bank with its principal address at 888 East Walnut St., Pasadena CA  911017211.  It is the servicer of Plaintiffs' current loan.

5.     <u>Holder</u>.  The Defendant John Doe Holder is the holder of the note and has ostensible title.

## FACTUAL ALLEGATIONS

6.     In 1994, the Plaintiffs purchased their home for about $60,000.

<u>May 2005 Quicken Loans</u>

7.     Sometime in 2005, Plaintiffs, who were current on their mortgage payments, desired to lower their monthly payments.  Plaintiffs saw a Quicken TV ad offering *fixed rate loans* with affordable terms.  Plaintiffs contacted Quicken, and Quicken emailed loan paperwork to them.

8.     The Defendant Quicken represented to the Plaintiffs that it could save them money, and that they would be provided with an affordable loan with good terms.

9.     Prior to closing, a representative of Quicken told Mrs. Bishop that the payments

2

were not fixed, but that Quicken would refinance the loan before Plaintiffs were required to make any increased payments.   Plaintiffs relied on this representation.

10.     At closing, Quicken provided Plaintiffs with two loans:

(a)     One of the loans was a 6.375 percent, 30 year, fixed rate loan for $84,000.

(b)     The second loan was a 6.8 percent, 15 year, $15,000 loan with a balloon payment of over $11,000.

July 2006 Quicken Loans (2nd Flip)

11.     Sometime in or around June, 2006, Quicken contacted Plaintiffs by phone and offered to refinance their mortgage loans to save them money.

12.     The Defendant Quicken represented to the Plaintiffs that it could save them money, and that they would be provided with an affordable loan with good terms.

13.     Prior to closing, a representative of Quicken told Mrs. Bishop that the payments were not fixed, but that Quicken would refinance the loan before Plaintiffs were required to make any increased payments. Plaintiffs relied on this representation.

14.     Quicken provided Plaintiffs with two loans:

(a)     One of the loans was a 6.5 percent, 30 year, fixed rate, interest only, loan for $112,400.

(b)     The second loan was a 9.895 percent, 15 year, $10,000 loan with a balloon payment of over $8,000.

December 2006 Quicken Loan (3rd Flip)

15.     Sometime in or around November, 2006, Quicken contacted Plaintiffs by phone and offered to refinance their mortgage loans.

16.     The Defendant Quicken represented to the Plaintiffs that it could save them money, and that they would be provided with an affordable loan with good terms.

17.     Defendants arranged for and relied upon an inflated appraisal of $153,000 for Plaintiffs' home.

18.     Said valuation was false.  The actual market value at that time was about $100,000.

19.     The representative of Quicken, John Sniveley, told Mrs. Bishop that the payments were not fixed, but that Quicken would refinance the loan before Plaintiffs were required to make any increased payments. Plaintiffs relied on this representation.

20.     Based upon the inflated appraisal, Defendant Quicken refinanced Plaintiffs a loan in the amount of $133,600.

21.     <u>Nature of an Option Arm Loan</u>

     (a)     Scheduled payments do not cover accrued interest;

     (b)     Accrued interest is added to loan balance; and

     (c)     Payments increase, often astronomically.

22.     <u>Closing</u>

     (a)     The loan closing took place on December 15, 2006.

     (b)     The closing occurred without any meaningful explanation or understanding of the transaction.  The Plaintiffs did not know what an "ARM" was.

     (c)     The Plaintiffs were not made aware they were receiving a negative amortization loan, that is, their scheduled payments would not cover accrued interest and the difference would be added to their loan balance.

4

(d)    In fact, it did not save money but added over $10,000 to principal.

(e)    In fact, much of the added cost was in closing costs, including $5,344 to the loan originator.

(f)    In fact, the appearance of savings came about by the use of the "Option ARM" which disguised negative amortization.

(g)    If the Plaintiffs had been informed that the loan was an "Option Arm" and that it had negative amortization, they would not have proceeded with the loan.

23.    Plaintiffs began making their monthly payments in the amount of $450.90.  They later discovered, and were shocked to find out, that the payments would more than double within five years, and continue to increase after that.

24.    <u>Attempts to Refinance</u>: In 2008, the Plaintiffs began to find out about the nature and impact of the loan.  Plaintiffs then attempted to refinance, but were rejected by a number of lenders, including Defendant Quicken.

25.    <u>Attempt to Modify</u>: Knowing that their payments would soon become unaffordable, in April, 2009, Plaintiffs contacted Defendant Servicer and requested a loan modification.  The Defendant Servicer denied Plaintiffs' request.

26.    <u>Attempt to Obtain Account Record</u>: On April 2, 2009, Plaintiffs made a written request to Defendant Servicer for a detailed account record of their loan.  Defendant Servicer failed to provide them with the record.

27.    <u>Discovery of Market Value</u>.  In July 2009, Plaintiffs learned of the actual market value of their home at the time of the last refinancing.

28.    <u>Attempt to Learn Identity of Holder</u>.  In Plaintiffs First Set of Interrogatories to All

5

Defendants, Interrogatory No. 5 requests that OneWest identify the holder of their loan. In its response, filed March 12, 2010, OneWest refused to identify the holder of the loan.

29.     Damage: The Plaintiffs have suffered financial loss, annoyance and inconvenience, and emotional distress.

## COUNT I – UNCONSCIONABLE CONTRACT

This Count is directed at Quicken and John Doe Holder.

30.     The Plaintiffs incorporate the preceding paragraphs by reference.

31.     The Defendants engaged in a pattern of home equity skimming and predatory lending practices to make unfair loans without regard to borrowers' ability to pay and induced by a promise of an affordable loan on good terms.

32.     The Plaintiffs are unsophisticated consumers with little understanding of financial matters.

33.     The loan originated by the Defendants was made without regard to the Plaintiffs' ability to pay and put them in jeopardy of losing their home.

34.     The loan agreement was induced by suppression of terms:

     (a)     Negative amortization;

     (b)     Excessive fees and costs; and

     (c)     Excessive valuation.

These constituted unfair surprise to the Plaintiffs.

35.     Under all circumstances alleged, the loan originated by Defendants was induced by unconscionable conduct, and therefore the loan agreement is unenforceable.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a)    Declaratory judgment that the practices engaged in by the Defendants are unconscionable and illegal as alleged and that the loan is unconscionable and void as a matter of law, and that the Court enjoin the Defendants from any further attempt to enforce the contract or assert liability thereunder;

(b)    Actual damages plus a civil penalties;

(c)    Reasonable attorney's fees and the cost of this litigation; and

(d)    Such other relief as the Court may deem equitable and just.

## COUNT II - ILLEGAL LOAN

This Count is directed at Quicken and John Doe Holder.

36.    Plaintiffs incorporate the preceding paragraphs by reference.

37.    Defendant Quicken imposed loan origination, investigation fees and/or points upon Plaintiffs twice within a twenty-four month period, in violation of West Virginia Code section 31-17-8(d).

38.    Defendant Quicken provided mortgage loans to Plaintiffs exceeding the fair market value of the property, in violation of West Virginia Code section 31-17-8(m)(8).

**WHEREFORE**, Plaintiffs respectfully pray for the following relief:

(a)    The Court declare the loan unenforceable pursuant to West Virginia Code sections 31-17-8(d) and 31-17-8(m)(8), and return payments made;

(b)    Actual penalty of $4,400 pursuant to West Virginia Code sections 46A-5-101(1) and 106;

(c)    Reasonable attorney's fees and the cost of this litigation; and,

(d)    Such other relief as may be equitable and just.

7

## COUNT III - FRAUD

This Count is directed at Quicken and John Doe Holder.

39.     The Plaintiffs incorporate the preceding paragraphs by reference.

40.     At the time of inducement and even at closing, Defendants misrepresented and suppressed specific rates and terms to Plaintiffs in the loan, and represented the loan would be refinanced before the Plaintiffs' payments increased.

41.     Defendants intentionally misrepresented these facts and suppressed the true cost/rate for the purpose of inducing the Plaintiffs to contract.

42.     The Plaintiffs reasonably relied upon their belief as to the low rate promised.

43.     Said misrepresentation and suppressions were material.

44.     The Plaintiffs were damaged by the misrepresentation and suppressions of the Defendants in the amounts they would be required to pay and are required to pay.

**WHEREFORE**, Plaintiffs respectfully pray judgment against the Defendants:

(a)     For actual and punitive damages;

(b)     For attorney fees, costs; and

(c)     For such other relief as the Court may deem appropriate and just.

## COUNT IV – FRAUD

This Count is directed at Quicken and John Doe Holder.

45.     The Plaintiffs incorporate the preceding paragraphs by reference.

46.     Upon information and belief, with the participation of the Defendant appraiser, Defendant Quicken relied on an inflated appraisal of $153,000.

47.     The Defendant Quicken intentionally arranged for and relied upon an appraiser and

8

relied on an inflated market value of the Plaintiffs' property for the purpose of inducing the Plaintiffs into the contract.

48. The said Defendants' origination of the loan upon an inflated appraisal was intentional and material.

49. The Plaintiffs reasonably relied upon the origination of the loan being consistent with prudent lending practices when entering into the loan agreement.

50. The Plaintiffs have been damaged by the Defendants' fraudulant conduct.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a)     Appropriate equitable relief enjoining the enforcement of the loan;

(b)     Actual and punitive damages;

(c)     Attorneys fees and costs; and,

(d)     Such othe relief as the Court may deem appropriate and just.

## COUNT V – FAILURE TO PROVIDE STATEMENT OF ACCOUNT

This Count is directed at OneWest and John Doe Holder.

51. The Plaintiffs incorporate the preceding paragraphs by reference.

52. The Defendant Servicer failed and refused to provide an account history to them in response to their written request of April 2, 2009, in violation of *W. Va. Code* § 46A-2-114(2).

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a)     Actual damages and a civil penalties of $4,400 for each violation pursuant to *W. Va. Code* § 46A-5-101(1) & 106.

(b)     Attorneys fees and the costs of this litigation; and

(c)     Such other relief as the Court may deem appropriate and just.

## COUNT VI - VIOLATION OF THE TRUTH IN LENDING ACT

This Count is directed at OneWest and John Doe Holder.

53.    Plaintiffs incorporate the preceding paragraphs by reference.

54.    Defendant OneWest received Plaintiffs' request for the name and address of the holder of Plaintiffs' loan.

55.    Defendant OneWest did not provide said information, in violation of 15 U.S.C. § 1641(f)(2).

**WHEREFORE,** Plaintiffs respectfully request the following relief:

(a)    Actual damages and civil penalties of $4,000, pursuant to 15 U.S.C. § 1640(a);

(b)    Attorney's fees and the costs of the litigation, pursuant to 15 U.S.C. § 1640(a); and

( c)    Such other relief as the Court deems equitable and just.

**THE PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Plaintiffs, **WILLIAM BISHOP** and
**JUANITA BISHOP,**
By Counsel:


  /s/ Cynthia A. Majestro
Cynthia A. Majestro (State Bar ID No. 5092)
Daniel F. Hedges (State Bar ID No. 1660)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
Telephone:  (304) 344-3144
Facsimile: (304) 344-3145