UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILLIAM BISHOP
and JUANITA BISHOP,

       Plaintiffs,

v.                          CASE NO. 2:09-01076

QUICKEN LOANS, INC,
ONEWEST BANK, FSB, and
DEUTSCHE BANK NATIONAL TRUST,

       Defendants.

MEMORANDUM OPINION AND ORDER

Pending are the motions to dismiss by defendant OneWest Bank, FSB ("OneWest"), filed April 26, 2010, and July 6, 2010. Also pending is the motion to dismiss by defendant Deutsche Bank National Trust ("Deutsche Bank"), filed May 21, 2010.[1]  No motions have been filed by Quicken Loans, Inc. ("Quicken Loans").

I.

The following facts are taken from plaintiffs' second

_____

[1]On July 6, 2010, Deutsche Bank filed a separate motion to dismiss Count V of the second amended complaint.  In their response to Deutsche Bank's July 6 motion to dismiss, filed July 23, 2010, plaintiffs clarified that Count V is directed only at OneWest.  Inasmuch as Count V is not directed at Deutsche Bank, it is ORDERED that Deutsche Bank's motion to dismiss Count V be, and it hereby is, denied as moot.

amended complaint.[2]  Plaintiff William Bishop is a veteran and
retired coal miner.  (Second Am. Compl. ¶ 2(a)).  He and his
wife, plaintiff Juanita Bishop, reside in Beckley, West Virginia,
in a home they purchased in 1994 for approximately $60,000.  (Id.
¶¶ 2(a)-(b), 6).  Neither is sophisticated in financial matters.
(Id.).

        In May 2005, plaintiffs obtained an adjustable-rate
mortgage loan from Quicken Loans, in order to refinance the
mortgage on their Beckley property.  (Id. ¶ 20).  Quicken Loans
is a Michigan corporation doing business in West Virginia with
its principal place of business in Michigan.  (Id. ¶ 3).  Prior
to closing, a Quicken Loans representative assured Mrs. Bishop
that, although the interest rate on the loan was not fixed,
Quicken Loans would work with plaintiffs to refinance the loan
before their monthly payments increased.  (Id. ¶ 9).

        In December 2006, Quicken Loans approached plaintiffs
and induced them to refinance their mortgage.  (Id. ¶ 15).  Based

---

        [2]The motions to dismiss of OneWest and Deutsche Bank are
based on plaintiffs' first amended complaint.  On June 8, 2010,
the court entered an order permitting plaintiffs to amend their
complaint for a third time in order to substitute federal law for
state law as the statutory basis for Count V and to clarify
Deutsche Bank's role as holder of the loan.  The court, by that
same order, deemed the motions to dismiss as directed to the
second amended complaint.

on an inflated appraisal of their Beckley home, plaintiffs obtained an Option Adjustable Rate Mortgage (the "ARM Note") in the amount of $133,600.  (Id. ¶ 20).  Quicken Loans did not inform plaintiffs that the interest accruing on the ARM Note would exceed their minimum scheduled payments, such that their loan balance might increase from month to month.  (Id. ¶ 22).

At some point thereafter, the ARM Note was transferred to defendant Deutsche Bank, and defendant OneWest was assigned the servicing rights to the ARM Note.  (Id. ¶¶ 4-5).  Both Deutsche Bank and OneWest are federal savings banks doing business in West Virginia but organized under the laws of California.  (Id.).  The second amended complaint does not specify the date that Deutsche Bank acquired the ARM Note or the date that the servicing rights thereunder were transferred to OneWest.

In April 2009, after plaintiffs learned that their monthly payments under the ARM Note had increased significantly, they attempted to contact the servicer of the ARM Note regarding a loan modification.  (Id. ¶ 25).  By letter dated April 2, 2009, and addressed to IndyMac Federal Bank (the "April 2009 letter"), Mr. Bishop requested that the servicer modify the ARM note, as he and his wife could no longer afford the monthly payments.

3

(OneWest's Mot. to Dismiss, Ex. B).[3]  Mr. Bishop further
requested a "detailed account record of the [ARM Note] together
with dates, payments and charges and total amount due."  (Id.).
Neither IndyMac Federal Bank nor any of the named defendants
provided plaintiffs with such a record.  (Second Am. Compl. ¶
26).

        Plaintiffs instituted this action in the Circuit Court
of Kanawha County on September 2, 2009.  (Notice of Removal 1).
Plaintiffs' second amended complaint alleges the following
claims:  Count I, Unconscionable Contract; Count II, Illegal
Loan; Counts III and IV, Fraud; Count V, violation of the Real
Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e);
and Count VI, violation of the Truth in Lending Act ("TILA"), 15
U.S.C. § 1640(f)(2).  Of these, Counts I through IV are alleged

---

        [3]Generally, extrinsic evidence should not be considered at
the motion to dismiss stage.  Nevertheless, the Fourth Circuit
has held that, "when a defendant attaches a document to its
motion to dismiss, a court may consider it in determining whether
to dismiss the complaint if it was integral to and explicitly
relied on in the complaint and if the plaintiffs do not challenge
its authenticity."  Am. Chiropractic v. Trigon Healthcare, Inc.,
367 F.3d 212, 234 (4th Cir. 2004) (alterations and internal
quotation marks omitted).  Plaintiffs explicitly referred to the
April 2009 letter in the second amended complaint, and at least
one of their claims against OneWest is predicated upon that
document.  (Second Am. Compl. ¶¶ 26, 51).  Accordingly, inasmuch
as plaintiffs have not challenged its authenticity, the court may
consider the April 2009 letter at this stage of the litigation.

against Quicken Loans and Deutsche Bank, and Counts V and VI are alleged against OneWest.

On October 2, 2009, defendants removed, invoking the court's diversity jurisdiction.  (Notice of Removal 1).  OneWest and Deutsche Bank have separately moved to dismiss what is now plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted.

## II.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).

5

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see</u> <u>also</u> <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'"  <u>Erickson</u>, 127 S. Ct. at 2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see</u> <u>also</u> <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ."  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

Inasmuch as Deutsche Bank asserts the same justifications for dismissing Counts I and II, the court will assess its motion to dismiss with respect to those counts together.  Similarly, inasmuch as Deutsche Bank raises the same

contentions with respect to each of plaintiffs' fraud claims, the court will address Counts III and IV together.

A.  Count I, Unconscionable Contract; Count II, Illegal Loan

Count I of the second amended complaint alleges that the ARM Note was induced by unconscionable conduct, in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101, <u>et seq.</u>  Count II alleges that defendants Quicken Loans and Deutsche Bank provided plaintiffs with a loan that exceeded the market value of the property, in violation of the West Virginia Residential Mortgage Lender, Broker and Servicer Act ("Residential Mortgage Act"), W. Va. Code § 31-17-1, <u>et seq.</u>  Under each count, plaintiffs seek actual damages, a civil penalty, and a declaration that the ARM Note is void and unenforceable.  In its motion to dismiss, Deutsche Bank asserts three justifications for dismissing Counts I and II.

Deutsche Bank first maintains that dismissal of Counts I and II is warranted inasmuch as plaintiffs seek a remedy under those counts that is not available to them, namely, cancellation of the ARM Note.  For example, citing this court's decision in <u>Byrd v. Option One Mortgage Corp.</u>, No. 2:04-1058 (S.D. W. Va.

7

Apr. 12, 2007), Deutsche Bank contends that the WVCCPA limits the remedy of cancellation to unsecured debts. (Deutsche Bank Mem. 2). Because the ARM Note is a secured loan, Deutsche Bank maintains that cancellation is improper and that Count I must therefore be dismissed. (Id.). Likewise, Deutsche Bank asserts that dismissal of Count II is proper because plaintiffs failed to plead facts sufficient to warrant cancellation under the Residential Mortgage Act. (Id. at 4).

Even assuming that plaintiffs are not entitled to the declaratory relief sought under the WVCCPA or the Residential Mortgage Act, that limitation does not compel the dismissal of Counts I and II. Notably, plaintiffs also seek actual damages and a civil penalty under those counts, remedies that are specifically contemplated by each of the relevant statutes. See W. Va. Code § 31-17-17(c); id. § 46A-5-101(1). Accordingly, inasmuch as other forms of relief are available to plaintiffs, dismissal of Counts I and II is not warranted simply because plaintiffs may be unable to obtain declaratory relief.

Deutsche Bank next contends that dismissal of Counts I and II is justified inasmuch as the alleged wrongdoing was committed solely by Quicken Loans, the originator of the ARM Note. (Deutsche Bank Mem. 3, 5). Deutsche Bank contends that

8

both the WVCCPA and the Residential Mortgage Act are silent as to the liability of a subsequent holder of a consumer loan for the actions of the loan's originator.  From this silence, Deutsche Bank infers that a subsequent holder of a consumer loan may never be liable for the original lender's wrongdoing.  (Deutsche Bank Reply 4, 10-11).  Accordingly, Deutsche Bank concludes that Counts I and II must be dismissed for failure to state a claim upon which relief can be granted.

General principles of West Virginia assignment law, however, support the conclusion that Deutsche Bank stepped into the shoes of Quicken Loans, thereby acquiring Quicken Loans' interest, subject to all claims and defenses existing at the time of the assignment.  For instance, the Supreme Court of Appeals of West Virginia has long held that an assignee normally "takes subject to all the defenses and all the equities which could have been set up against the instrument in the hands of the assignor at the time of the assignment."  Lightner v. Lightner, 146 W. Va. 1024, 1034, 124 S.E.2d 355, 362 (1962).  Consistent with this principle, several courts in this district have recognized that a mortgage holder may be liable for the common law and statutory violations of the original lender.  See, e.g., Short v. Wells Fargo Bank Minn., N.A., 401 F. Supp. 2d 549 (S.D. W. Va. 2005);

England v. MG Investments, Inc., 93 F. Supp. 2d 718 (S.D. W. Va.

2000); Hays v. Bankers Trust Co., 46 F. Supp. 2d 490 (S.D. W. Va.

1999).  In Short, for instance, the plaintiff asserted, inter

alia, an unconscionable contract claim under the WVCCPA against

Wells Fargo, the holder of the plaintiff's mortgage loan.  401 F.

Supp. 2d at 552.  Notwithstanding that Wells Fargo was uninvolved

in the loan's origination, the court concluded that "Wells Fargo,

as assignee, is subject to all claims and defenses, whether under

TILA or other law, that could be raised against [the original

lender]."  Id. at 562.  The court thus denied Wells Fargo's

summary judgment motion.  Id.

          A different conclusion is not compelled here simply

because the WVCCPA and the Residential Mortgage Act are silent as

to the liability of a subsequent holder for origination claims.

Indeed, it is well settled that a statute is to be "read in

context with the common law unless it clearly appears from the

statute that [its] purpose was to change the common law."

Holsten v. Massey, 200 W. Va. 775, 786, 490 S.E.2d 864, 875

(1997); see also State ex rel. Van Nguyen v. Berger, 199 W. Va.

71, 75, 483 S.E.2d 71, 75 (1996) ("[The] common law is not to be

construed as altered or changed by statute, unless legislative

intent to do so be plainly manifested." (internal quotation marks

omitted)).  Inasmuch as neither statute plainly alters the well-established rule that an assignee takes an instrument subject to all claims that may be asserted against the assignor, dismissal of Counts I and II is not warranted on the theory that Deutsche Bank was not the original lender to plaintiffs.

Finally, Deutsche Bank asserts that, even if liability can be imposed on a subsequent holder of a consumer loan for the actions of the loan's originator, dismissal of Counts I and II is nonetheless warranted because it is insulated from liability under the holder-in-due-course doctrine.  (Deutsche Bank Mem. 4). Deutsche Bank's contention in this regard must be rejected, however, for plaintiffs have raised questions about Deutsche Bank's entitlement to status as a holder in due course. Specifically, plaintiffs allege that Deutsche Bank "was in a continuing business relationship with [Quicken Loans] with regard to the origination and collection of [the ARM Note]." (Second Am. Compl. ¶ 5(c)).  Under West Virginia law, a general business relationship between a payee and an assignee of an instrument may be sufficient, in itself, to deny the purchaser protected status. See, e.g., Md. Fin. Corp. v. People's Bank, 99 W. Va. 230, 238, 128 S.E.2d 294, 296 (1925).  Accordingly, Deutsche Bank's motion to dismiss Counts I and II is denied.

11

B.    Counts III and IV, Fraud

        Counts III and IV of the second amended complaint
assert fraud claims against defendants Quicken Loans and Deutsche
Bank.  Specifically, Count III alleges that these defendants
intentionally misrepresented the interest rate that would apply
to the ARM Note.  (Second Am. Compl. ¶ 40).  In Count IV,
plaintiffs allege that the defendants intentionally
misrepresented the market value of their property using an
inflated real estate appraisal for the purpose of inducing
plaintiffs into the loan.  (Id. ¶ 47).

        Deutsche Bank first contends that Counts III and IV
should be dismissed because plaintiffs failed to plead fraud with
the requisite particularity, as required by Rule 9(b).  That rule
provides in pertinent part that, "[i]n alleging fraud . . . , a
party must state with particularity the circumstances
constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The
Fourth Circuit has observed that the "circumstances" required to
be pled with particularity under Rule 9(b) are "the time, place,
and contents of the false representations, as well as the
identity of the person making the misrepresentation and what he
obtained thereby."  Harrison v. Westinghouse Savannah River Co.,

176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted).

Here, plaintiffs' second amended complaint is pled with the requisite particularity.  Count III, for instance, specifies that, at closing, defendant Quicken Loans "misrepresented and suppressed specific rates and terms to Plaintiffs in the loan, and represented the loan would be refinanced before the Plaintiffs' payments increased."  (Second Am. Compl. ¶ 40). Similarly, Count IV alleges that Quicken Loans "intentionally arranged for and relied upon an appraiser and relied on an inflated market value of the Plaintiffs' property for the purpose of inducing the Plaintiffs into the contract."  (Id. ¶ 47). These allegations sufficiently identify the party responsible for the fraudulent acts, when the misrepresentations occurred, and what the defendants obtained as a result.  Accordingly, dismissal of Counts III and IV is not warranted for failure to comply with Rule 9(b).[4]

Next, Deutsche Bank asserts that Counts III and IV are

---

[4]Nor is dismissal warranted because Deutsche Bank did not participate in the loan's origination.  (See Deutsche Bank Mem. 5, 7).  As explained, consistent with general principles of West Virginia assignment law, Deutsche Bank, as holder of the ARM Note, may be liable for the wrongdoing of Quicken Loans.

barred by the statute of limitations and should thus be dismissed.  (Deutsche Bank Rep. 13).  Notably, Deutsche Bank first raised this contention in its reply to plaintiffs' response to the motion to dismiss, and plaintiffs have not had an opportunity to address Deutsche Bank's statute of limitations defense.  Nevertheless, the court is satisfied that Deutsche Bank's contention in this regard may be disposed of without seeking plaintiffs' surreply.

Where a cause of action is based on a claim of fraud, the statute of limitations does not begin to run until the injured party "knew or should have known by the exercise of reasonable diligence of the nature of their claims."  Stemple v. Dobson, 184 W. Va. 317, 320, 400 S.E.2d 561, 564 (1990).  Whether the injured party knew or should have known of an action is determined by an objective test focusing on whether a reasonably prudent person in the plaintiff's shoes would have or should have known of a possible cause of action.  Dunn v. Rockwell, 689 S.E.2d 255, 265 (W. Va. 2009).  Importantly, such an inquiry is a question of fact typically reserved for the jury.  Id.

Plaintiffs allege that they did not learn of the true nature of the ARM Note until 2008, at which point they attempted

14

to refinance.  (Second Am. Compl. ¶ 24).  Deutsche Bank has not asserted that plaintiffs should have known of their fraud claims prior to 2008.  Accordingly, inasmuch as plaintiffs initiated this action within two years of learning of their potential claim, dismissal on the basis of the statute of limitations is not warranted.  Deutsche Bank's motion to dismiss Counts III and IV is thus denied.

C.    Count V, Violation of the Real Estate Settlement Procedures Act

Count V of the second amended complaint alleges that OneWest "failed and refused to provide an account history to them in response to their qualified written request [in their April 2009 letter], in violation of 12 U.S.C. § 2605(e)."  (Second Am. Compl. ¶ 52).  In response, OneWest maintains that the April 2009 letter was not a qualified written request, inasmuch as Mr. Bishop mailed the April 2009 letter to IndyMac Federal Bank rather than to OneWest.

Section 2605(e) of RESPA provides in pertinent part that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response

acknowledging receipt of the correspondence within 20 days."  12

U.S.C. § 2605(e)(1)(A).  The statute further provides that,

within 60 days of receipt of the qualified written request, the

servicer must, _inter alia_, provide the borrower with a written

explanation that includes information requested by the borrower

or an explanation why such information is unavailable.  _Id._ §

2605(e)(2)(C)(i).  A qualified written request is defined as a

written correspondence that (1) "includes, or otherwise enables

the servicer to identify, the name and account of the borrower";

and (2) "provides sufficient detail to the servicer regarding

other information sought by the borrower."  _Id._ § 2605(e)(1)(B).

          Pursuant to the statute's plain language, a loan

servicer's duty to provide information to the borrower is

triggered only when it receives a qualified written request from

the borrower or the borrower's agent.  Consistent with this plain

language, numerous courts have dismissed a borrower's RESPA claim

where the borrower failed to communicate directly with the

servicer of the loan.  _See, e.g._, _Carter v. Countrywide Home_

_Loans, Inc._, No. 3:07-cv-651, 2009 WL 2742560, at *20-21 (E.D.

Va. Aug. 25, 2009) (observing that, where borrower alleges that

servicer failed to comply with RESPA, "borrower must demonstrate

that [he] mailed the qualified written request to the proper

16

address, such that the servicer's duties to respond were

'triggered' under the statute"); <u>Griffin v. Citifinancial</u>

<u>Mortgage Co.</u>, No. 3:05-cv-1502, 2006 WL 266106, at *6-7 (M.D. Pa.

Feb. 1, 2006) (holding that servicer had no duty to respond to

written request sent to servicer's counsel); <u>Bally v. Homeside</u>

<u>Lending, Inc.</u>, No. 02-c-5799, 2005 WL 2250856, at *7 (N.D. Ill.

Sept. 8, 2005) (concluding that only a request sent to the

address identified by servicer constitutes qualified written

request).  Such a requirement comports with the regulations

promulgated under RESPA, which specifically authorize a mortgage

servicer to designate an address to which a borrower's inquiries

must be directed.  <u>See</u> 24 C.F.R. § 3500.21(e)(1).

        The court also notes that, even if plaintiffs had

alleged that they sent a written request directly to OneWest,

thereby triggering OneWest's duty to respond, Count V would

nevertheless fail to survive the motion to dismiss.  Put simply,

plaintiffs have failed to allege that any RESPA violation

resulted in actual damages.  <u>See</u> 12 U.S.C. § 2605(f)(1)(A)

("Whoever fails to comply with this section shall be liable to

the borrower . . . [for] any actual damages to the borrower as a

result of the failure.").  Although plaintiffs allege that they

"have suffered financial loss, annoyance and inconvenience,"

(Second Am. Compl. ¶ 29), plaintiffs do not allege how OneWest's failure to comply with RESPA caused them harm. See Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."). Such a pleading requirement "has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a [failure to comply with RESPA] has caused them actual harm." Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).

        In view of these requirements, the court concludes that plaintiffs have not pled the requisite elements for their RESPA claim. As currently pled in Count V, it is unclear whether plaintiffs ever sent the April 2009 letter to OneWest or whether OneWest's failure to provide information in response actually harmed plaintiffs. Without these required elements, plaintiffs' RESPA claim lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face under Twombly and its progeny. Accordingly, Count V's RESPA claim is dismissed without prejudice.

**D.    Count VI, Violation of the Truth in Lending Act**

Plaintiffs allege in Count VI that, in their First Set of Interrogatories and Request for Production of Documents, filed December 11, 2009, they specifically requested that OneWest identify the holder of the ARM Note.  Count VI further alleges that OneWest objected to the interrogatory and refused to identify the holder in its Objections, Answers and Responses, filed March 12, 2010.  Plaintiffs maintain that this refusal constituted a violation of TILA.  See 15 U.S.C. § 1641(f)(2) ("Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.").

In response, OneWest contends that Count VI fails to state a claim, insofar as plaintiffs sent their "written request" to OneWest's counsel rather than directly to OneWest.  (OneWest Mem. 10).  Additionally, OneWest asserts that an interrogatory posed during discovery is not a "written request" for purposes of TILA.  (Id. at 11).  Finally, OneWest maintains that § 1641(f)(2) is unconstitutionally vague, insofar as that provision fails to specify a time by which a servicer must respond to a borrower's written request.  (Id. at 12).

19

As an initial matter, the plain language of the statutory provision at issue indicates that a servicer's obligation to identify the holder of a borrower's loan is triggered only upon receiving a written request from the borrower.  See 15 U.S.C. § 1641(f)(2).  The statute includes no provision allowing borrowers seeking information from their servicer to send their written requests to anyone other than the servicer, including the servicer's agent.  Cf. Griffin, 2006 WL 266106, at *6-7 (dismissing borrowers' RESPA claim because borrowers "did not send a qualified written request to their servicer, and instead sent it to their servicer's outside counsel").  Here, plaintiffs made their supposed written request by way of interrogatory delivered to OneWest's counsel in this matter.  Because OneWest did not receive the written request from plaintiffs prior to the filing of this suit, plaintiffs had no basis for framing their Count VI claim thereon.  That is not to suggest that OneWest had no duty to disclose the holder of plaintiffs' ARM Note in response to a general discovery request, an issue not now before the court.

Moreover, the court agrees that a discovery request should not constitute a "written request" for purposes of TILA. To treat an interrogatory posed during discovery as a written

20

request would be inconsistent with the Federal Rules of Civil Procedure, which explicitly allow a party to object to a discovery request. <u>See</u> Fed. R. Civ. P. 33(b)(4).  A party faced with an interrogatory requesting the identity of the holder of a loan should not be forced to choose between complying with TILA and exercising its right to object under Rule 33.  <u>See, e.g.</u>, <u>United States ex rel. Boothe v. Sun Healthcare Group, Inc.</u>, 496 F.3d 1169, 1176 (10th Cir. 2007) (observing that subsequently enacted statutes ought to be construed to harmonize with Federal Rules, inasmuch as Congress reviews and implements those rules). Accordingly, Count VI is dismissed without prejudice.  Because dismissal of Count VI is warranted on these grounds, the court need not assess OneWest's alternative contention that § 1641(f)(2) is unconstitutionally vague.

E.   Mrs. Bishop

        Finally, both Deutsche Bank and OneWest contend that Mrs. Bishop did not sign the ARM Note.  Inasmuch as the ARM Note gives rise to each of the six claims asserted in the second amended complaint, the defendants maintain that Mrs. Bishop does not state a claim upon which relief can be granted.  They assert that she must therefore be dismissed from the case.

21

The evidence before the court, including the ARM Note itself, supports the defendants' contention that Mrs. Bishop is not a party to the agreement.  In their second amended complaint, plaintiffs allege that Mr. Bishop "is the borrower of the loan that is the subject [of] this action."  (Second Am. Compl. ¶ 2(a)).  With respect to Mrs. Bishop, however, plaintiffs allege only that "[s]he resides with her husband in Beckley, West Virginia, and is the co-owner of their home."  (Id. ¶ 2(b)).  Plaintiffs do not allege that Mrs. Bishop is also a borrower for purposes of the ARM Note.  Moreover, the ARM Note itself clearly indicates that only Mr. Bishop signed the document as a borrower.  (See OneWest's Mot. to Dismiss, Ex. C, at 6).

Inasmuch as Mrs. Bishop is entitled to recover only if she is a borrower, her claims in Counts I through VI lack sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face under Twombly and its progeny.  Accordingly, Mrs. Bishop's claims against Deutsche Bank and OneWest are dismissed with prejudice.

IV.

Based on the foregoing analysis, it is ORDERED as follows:

22

1) that OneWest's motions to dismiss, filed April 26, 2010, and July 6, 2010, be, and hereby are, granted as set forth herein;

2) that Deutsche Bank's motion to dismiss, filed May 21, 2010, be, and hereby is, granted as set forth herein and denied in all other respects;

3) that Deutsche Bank's motion to dismiss, filed July 6, 2010, be, and it hereby is, denied as moot;

4) that Count V be, and hereby is, dismissed without prejudice;

5) that Count VI be, and hereby is, dismissed without prejudice;

6) that defendant OneWest be, and hereby is, dismissed without prejudice from this action; and

7) that plaintiff Juanita Bishop's claims be, and hereby are, dismissed as to Deutsche Bank and OneWest with prejudice.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: September 8, 2010

John T. Copenhaver, Jr.
United States District Judge

23